**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        )
POPOVITCH & POPOVITCH, LLC and          )
FREDERICK E. POPOVITCH,                 )
                                        )
                   Plaintiffs,          )
                                        )        Civil Action No. 07-2225 (GEB)
        v.                              )
                                        )        **MEMORANDUM OPINION**
EVANSTON INSURANCE COMPANY,             )
                                        )
                   Defendant.           )
_____)

**BROWN, Chief Judge**

    This matter comes before the Court upon a Motion for Summary Judgment of the defendant

Evanston Insurance Company ("Defendant").  (Docket Entry No. 11.)  The Court has reviewed the

parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil

Procedure 78.  This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332.  For the

reasons that follow, the Court grants Defendant's Motion for Summary Judgment.


## I.    BACKGROUND

    This matter involves Evanston Insurance Company, an Illinois corporation, that had provided

professional liability insurance to plaintiffs Popovitch & Popovitch, LLC, and Frederick Popovitch,

Esq. (collectively "Plaintiffs") from December 29, 2000 to December 29, 2002. Mr. Popovitch seeks

defense and indemnification in respect to a malpractice suit that was brought against him and his

law firm as a result of his representation of an individual named Yvonne Braime ("the underlying dispute"). Defendant has denied coverage to Plaintiffs, and the instant suit arose as a result. The issue before the Court involves interpretation of the insurance policy and whether coverage was improperly denied.

### A.     The Underlying Action

Yvonne Braime retained Mr. Popovitch during 1997 in relation to a potential medical malpractice claim against Dr. Toufic Boucherit. (Docket Entry No. 14-3 at 2.) According to Mr. Popovitch, in seeking representation, "Ms. Braime said that, while Dr. Boucherit was administering an epidural injection in her back, he may have punctured one of her kidneys." (Id.) Mr. Popovitch filed the action on Ms. Braime's behalf in September 1998 in New Jersey Superior Court, Law Division - Union County, and also named several other defendants, Overlook Hospital, Dr. Steven Nehmer, and Dr. Kalas. (Id. at 2-3.) Mr. Popovitch failed to timely serve answers to interrogatories, and as a result, the matter was dismissed with prejudice, even though the record reflects that Mr. Popovitch finally served the answer to interrogatories on the eve of the return date for a motion to dismiss with prejudice. (Id. at 4.) A motion for reconsideration that Mr. Popovitch subsequently filed was likewise denied. (Id.) Mr. Popovitch states that he "timely filed a notice of appeal and was positive [the state court judge's] decision would be reversed." (Id. at 5.) However, the Appellate Division dismissed the appeal due to a defect in its filing. According to Mr. Popovitch, he received notice of the dismissal in May 2000, and he thereafter "drafted a motion to restore the appeal" but that motion was never filed because Mr. Popovitch "had, simply, forgotten about Ms. Braime's matter" due to the "large volume of active cases and several major trials looming" and the

"changeover in . . . secretarial staff at that time" in his office.  (Id. at 5-6.)   Mr. Popovitch also attributes his failure to file the motion to reinstate Ms. Braime's appeal to his deteriorating health "including kidney failure, dialysis, and vascular problems."  (Id. at 6.)

### B.       The Policy at Issue

From December 29, 2000, to December 29, 2002, Evanston Insurance Company provided insurance coverage for the law firm Popovitch & Popovitch, LLC, and its two attorneys, including Plaintiff Mr. Popovitch.  (Ex. Z, attached to the Decl. of Aileen F. Droughton) (Docket Entry No. 11-4 at 62.)  Plaintiffs and Defendant entered into an agreement, policy no. LA-801140 ("the policy"), for Lawyer's Professional Liability Insurance, with an effective date of December 29, 2000. (Ex. Y,  attached to the Decl. of Aileen F. Droughton) (Docket Entry No. 11-4 at 47.)  The policy was extended for another year, valid until December 29, 2002.  (Id. at 63.)   In the quote for the extension and in the original declarations page, the retroactive date identified was the date of the policy inception, December 29, 2000.  (Id. at 50, 62.)  The policy was identified as a "Claims Made and Reported policy," and it explained on the first page: "This policy provides coverage for only those CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE TERMS OF THIS POLICY." (Id. at 47.)  The third page of the policy addressed a "prior acts exclusion," and provided that "[t]his policy does not apply to any claim made against the Insured arising out of any act, error or omission in professional services or Personal Injury in professional services happening prior to: December 29, 2000," or in other words, any incident that occurred prior to the effective date of the policy.  (Id. at

3

50.)

    The section of the policy labeled "The Coverage" provides:

    The Company shall pay on behalf of The Insured, subject to the limits of liability, sums in excess of the deductible amount which The Insured shall become legally obligated to pay as Damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE PROVISION OF CLAIMS 1:

    (a)    because of any Act; or

    (b)    because of any Personal Injury,

    PROVIDED ALWAYS THAT such Act or Personal Injury happens,

    (aa)    during the Policy Period; or

    (bb)    prior to the Policy Period provided that, on or prior to the effective date of this policy, no Insured was aware of any facts or circumstances from which a reasonable person would have anticipated a Claim

(Id. at 52.)

    Other relevant provisions of the policy include that "[s]election of defense counsel shall be made by the Company," (Id. at 53), that "[t]he Insured shall not, with respect to any Claim covered under this policy, except at The Insured's personal cost, make any payment, admit liability, settle Claims, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur Claim Expenses without prior written Company approval." (Id.) Further, the policy states, regarding "Discovery of Potential Claims:"

    If, during the Policy Period, The Insured first becomes aware of any Act or Personal Injury for which a Claim might reasonably be expected to be made for which insurance is otherwise provided by this policy and gives written notice of such Act or Personal Injury which is received by the Company during the Policy Period, then any Claim subsequently made arising out of that Act or Personal Injury shall be considered to have been made on the date such written notice is received by the Company.

(Id. at 54.)

The policy also outlines the "Insured's Duties in the Event of Claim," and describes these "Duties" as "a condition precedent to the availability of coverage under this policy."  (Id. at 56.) The policy states: "If suit is brought or arbitration is instituted against The Insured, then The Insured shall immediately forward to the company . . . every demand, notice, summons or other process received by The Insured or their representative;" and it also states: "If any Claim, other than a suit or arbitration proceeding, is made, then The Insured shall give as soon as practicable, written notice to the Company containing particulars sufficient to identify The Insured and claimant and full information with respect to the time, place and circumstances of the Claim;" and it further provides: "In any event any Claim or suit made or arbitration instituted against The Insured during the Policy Period MUST BE REPORTED IN WRITING TO AND RECEIVED BY THE COMPANY WITHIN SIXTY (60) DAYS AFTER THE EXPIRATION OF THE POLICY PERIOD."  (Id. at 56.)

### C.    Circumstances of the Instant Claim

Yvonne Braime eventually learned that her lawsuit in the underlying action had been dismissed, and an attorney, on her behalf, began to look into its dismissal.  That attorney filed a Verified Petition, dated November 9, 2001, in the Superior Court of New Jersey, Law Division - Union County, Docket No. MON-L-1968-04, in which it stated that Frederick Popovitch was Ms. Braime's attorney in a case involving medical negligence, and that case was ultimately dismissed, and that Mr. Popovitch "refused to provide [Ms. Braime] with any information concerning the dismissal and [had] not provided [Ms. Braime] with copies of [her] file material." (Verified Petition, Nov. 9, 2001, ¶¶1-4) (attached to Decl. of Popovitch) (hereinafter "the Verified Petition").  The relief

sought in the Verified Petition was as follows:

> WHEREFORE, Petitioner prays for an entry of an Order authorizing that [Popovitch] provide the complete file and documents to Petitioner in connection with a claim based on medical negligence and that [Popovitch] make himself available for his deposition testimony to obtain testimony concerning his representation of [Braime]; and the litigation filed in [sic] behalf of [Braime].

(Id. at 3.)

On December 4, 2001, Mr. Popovitch faxed to Davies and Associates, his insurance broker, a "cover letter and deposition notice" regarding the Verified Petition.  (Ex. AA) (Docket Entry No. 11-4 at 66.)[1] Shand Morahan & Company, Inc., attorneys for Defendant insurance company, having reviewed the Verified Petition, responded to Plaintiffs in a letter dated January 22, 2002, in which they "acknowledge[d] receipt . . . of a notice of potential claim . . . received by Evanston on December 6, 2001."  (Id. at 68.)  The letter stated that the material received from Plaintiffs "do not set forth specific allegations asserting negligence or other claims against [Plaintiffs]."  It also notes that all of the noteworthy events regarding Plaintiffs' interaction with Yvonne Braime occurred "prior to the inception of the Policy."  (Id. at 69.)  Further, it advises Plaintiffs that "the Order compelling your deposition is not a Claim under the Policy, as it is not a demand for Damages but simply seeks to compel your attendance to give testimony and to produce your litigation file."  (Id. at 70.)  The letter further states that "[t]his policy does not apply to any claim made against the Insured arising out of any act, error or omission in professional services or Personal Injury in professional services happening prior to December 29, 2000."  (Id.)  Further, it provides that "in the event of a future 'Claim,' there would be no coverage for a Claim arising out of your representation

---

[1] The actual cover letter and deposition notice was not filed in conjunction with Ex. AA's fax cover sheet.

of Ms. Braime as the Act, error or omission occurred prior to December 29, 2000." The letter also states that "Evanston reserves the right to supplement this letter, as additional facts are made known or as circumstances warrant" and "considers all rights fully and mutually reserved." (Id.) It finally invites Plaintiffs to submit "any further information that [they] feel is relevant to a determination of this claim." (Id.)

Approximately two and one half years later, on April 30, 2004, Yvonne Braime filed a complaint in the Superior Court of New Jersey, Law Division - Monmouth County, alleging a professional malpractice claim against Plaintiffs as a result of the previously described underlying proceeding. (Ex. CC) (Docket Entry No. 11-4 at 73.) On February 8, 2005, an order was entered in the Superior Court of New Jersey, striking Mr. Popovitch's answer and suppressing the defenses because Mr. Popovitch failed to provide discovery. (Id. at 80.) Then, on June 15, 2005, an order was filed, stating that Mr. Popovitch's "Answer be hereby stricken and their defenses suppressed, with prejudice, pursuant to N.J. Ct. Rule 4:23-5(a)(2)." (Docket Entry No. 11-4 at 82.) The state court judge issued an order on June 9, 2006, vacating the order suppressing Mr. Popovitch's pleadings so long as the payment of reasonable attorney's fees were received, and on August 25, 2006, the state court judge ordered that fees were due in the amount of $5,000.00 within thirty days of the date of the order. (Docket Entry No. 11-5 at 6.) The fees were not received as of October 5, 2006, and therefore, the attorney for Ms. Braime requested that default be entered against Mr. Popovitch, and default was entered. (Id. at 6-12.) A proof hearing was subsequently held in the Superior Court of New Jersey, on April 20, 2007, before the Honorable Jamie S. Perri, J.S.C., where the court held:

> There's no question in the Court's mind that the plaintiff has produced
> sufficient proofs to prevail on her claim on legal malpractice. It's an unfortunate, but

not extraordinarily rare circumstance where for whatever reason, the attorney does not comply with discovery requests. The client is essentially left in the dark. And this is unfortunately, not the first time that I have heard of circumstance where the only time that the client learns that the matter has been dismissed is when the attorney essentially has abandoned her and she takes it upon herself to go to court and discovers that the matter has been dismissed.

For all the reasons set forth in the record, all of the evidence with regard to the notices from the Court, the dismissal of the complaint without prejudice, the opportunity to restore the abandonment of the client, the ultimate sanction in the underlying case of a dismissal with prejudice, the filing of an appeal and then the abandonment of the appeal, all show very convincingly that the defendant committed legal malpractice in his representation of Ms. Braime with regard to her underlying matter.

(Ex. II, 4/20/07 Tr. 134-135) (Docket Entry No. 11-5 at 80-81.) The judge ordered damages in the amount of $275,000.00 for the injury that was the subject of the medical malpractice action, plus counsel fees that resulted from the legal malpractice action against Mr. Popovitch. (Id. at 82-83.)

With respect to these proceedings in state court that were initiated by Ms. Braime on April 30, 2004, Plaintiffs did not forward the pleadings or otherwise provide any written notice to Defendant after having received the complaint for damages during Spring 2004. (Decl. of Popovitch ¶19.) Mr. Popovitch certified that he believed that "[p]roviding [Defendant] with a copy of the complaint would have been futile" because Defendant in January 2002 wrote the letter in which it communicated "that they were never going to defend [Plaintiff] in the lawsuit, because of the 'prior occurrences' exclusion." (Id. at ¶¶18, 19.)

## II.    DISCUSSION

Defendant, in support of its Motion for Summary Judgment, argues that it "is entitled to recision and . . . reformation of the policy because [Plaintiffs'] material misrepresentations constitute equitable fraud." (Def.'s Mot. Br.) (Docket Entry No. 11-8 at 17.) Defendant avers that its motion

8

should be granted, alternatively, because "the policy does not afford coverage for the underlying action because the claim falls outside of the insuring agreement." (Id. at 24.) Finally, Defendant asserts that its motion should be granted because "the policy does not afford coverage for the underlying action because [Plaintiffs] failed to give [Defendant] notice of the claim in accordance with the clear and unambiguous terms of the policy." (Id. at 27.)

Plaintiffs in opposition to the motion, argues that "there are material issues of fact as to whether [Plaintiffs] committed 'equitable fraud," (Pl.'s Opp. Br.) (Docket Entry No. 14 at 2); that "there are material issues of fact as to whether [Defendant] is entitled to the equitable relief requested even if equitable fraud were established," (Id. at 18); that Defendant was in fact notified of the claim against Plaintiffs by way of "Braime's verified complaint advising that she was 'damaged' and that she anticipated filing a civil action against [Plaintiffs]" (Id. at 20); that "Provision 1(bb) of the policy cannot be used to preclude coverage" and "there are material issues of fact as to whether [Plaintiffs] subjectively knew there was a claim against him," (Id. at 22); and that Defendant should be "estopped from invoking the notice provisions, and if [Defendant] suffered any prejudice from ignoring the . . . suit it has only itself to blame," (Id. at 23).

In reply, Defendant argues that the "claim falls outside of the insuring agreement and, alternatively, [Defendant] is entitled to reformation of the policy to exclude coverage for the subject claim, because Plaintiffs had subjective knowledge of the potential for a claim arising from their representation of Yvonne Braime when they completed the Harleysville and Shand applications," (Def.'s Rep. Br.) (Docket Entry No. 17 at 1); that Defendant "relied upon the information provided by Plaintiffs in the insurance applications" (Id. at 8); that "the verified petition was not a claim for monetary damages as defined in the policy," (Id. at 9); that Defendant "is not estopped from denying

9

coverage," (Id. at 12); and that "Plaintiffs' assertion of the defense of laches is without merit" (Id. at 15).

The Court then granted Plaintiffs' request to file a sur-reply, in accord with Local Civil Rule 7.1(d)(6), due to Plaintiffs' assertion that a new case had been filed and relied upon by Defendants.[2] (Docket Entry No. 18.)  In Plaintiffs' sur-reply, Plaintiff addresses Defendant's reliance Westport Ins. Corp. v. Jacobs & Barbone, P.A., No. 08-801, 2009 U.S. Dist. LEXIS 23869 (D.N.J. Mar. 25, 2009), and argues that it should be distinguished, and that the case improperly failed to address Liberty Surplus Ins. Co. v. Nowell Amoroso, 189 N.J. 436 (2007), which held that where an insurance policy is ambiguous, a court should examine whether the policy holder subjectively knew that there was a possible claim against him or her.  (Pl.'s Sur-Rep. Br.) (Docket Entry No. 19 at 4-5.) Plaintiffs also maintain that there is a dispute of material fact regarding whether Plaintiffs' "belief should be rejected as 'incredible' because it requires a determination regarding his credibility, a realm that is traditionally delegated to the finder of fact.  (Id. at 6.)[3]  Plaintiffs reiterate the arguments asserted in their opposition brief, namely that it is against public policy to allow Defendant to deny coverage and that the prior-occurrence exclusion is unlawful, that the affidavit of Jeanette

---

[2]      In Plaintiffs' letter requesting permission to file a sur-reply, Plaintiff asserts that Defendant had previously filed a sur-reply.  In order to clarify any confusion that may result from Plaintiffs' assertion, the Court never received nor did Defendant file a "sur-reply" and such was not the basis for granting Plaintiffs' request.  Defendant had merely filed a reply brief in accord with Local Rules.  Plaintiff also based its request on the fact that a relevant case had recently been filed within the District, and the Court granted the request on this basis.

[3]      Defendant objects to this Court's consideration of Plaintiffs' sur-reply, insofar as it exceeds the scope of its discussion regarding  Westport Ins. Corp. v. Jacobs & Barbone, P.A. Defendant has requested that should the Court consider Plaintiffs' sur-reply in its entirety, that it also accept and consider Defendant's sur-reply, filed on May 7, 2009.  (Docket Entry No. 21.) The Court will consider, in full, both submissions.

McDonough should be excluded because it was never provided during discovery, that Defendant should be required to return the first year's premiums to Plaintiffs due to its refusal to provide coverage or should be required to provide coverage and should not be able to receive the benefit of both. (Id. at 7-8.)  Plaintiffs object to Defendant's production and reliance on Mark Henderson's affidavit because it was not produced during discovery.  (Id. at 9.)  Plaintiffs also repeat their argument regarding the interpretation of the policy, maintaining that "taken literally, nothing short of a judgment or settlement would constitute a 'claim' under the policy; read sensibly, the definition of 'claim' would include a verified court document wherein a former client says she was damaged by her attorney's legal malpractice and will be filing a lawsuit against him." (Id. at 9-10.)  Finally, Plaintiffs reassert their laches defense, arguing that Defendant first asserted equitable fraud in 2007. (Id. at 15-16.)

Defendant also received permission to file a sur-reply, which this Court considered in its entirety.  Defendant maintains that "whether the subjective or objective test is utilized by the Court, Mr. Popovitch knew that his actions could result in a malpractice claim by Braime." (Id. at 4.) Defendant also avers that it "relied upon the representations made by Plaintiffs in the Harleysville and Shand applications and any shortcoming of the discovery propounded by Plaintiffs cannot be blamed on [Defendant]." (Id. at 6.)  Defendants also point out that "Plaintiffs had an obligation to report all claims to [Defendant]," and failed to "report the subsequent claim made by Braime when a complaint containing allegations of professional malpractice and demanding damages was filed." (Id. at 9.) Moreover, Defendant asserts that "Plaintiffs were uninsurable and [Defendant's] policy

gave them an opportunity to improve their coverage history,"[4] and argues that Plaintiffs' insurance broker requested "a $500,000 policy with a retroactive inception date," and as a result, Plaintiff "had no reasonable basis to believe that the Policy would afford retroactive coverage."  (Id. at 10.) Defendant points out that "to the extent that this is not the coverage that Plaintiffs wanted, their complaint is with their insurance broker," rather than with Defendant.  (Id.)   In reference to Plaintiffs' asserted laches defense, Defendant states that it was Plaintiffs that "sat on their hands while the defaults and judgments were being entered against them in the underlying malpractice matter," and that it is "Plaintiffs' failure to report the claim and to meaningful[ly] defend Yvonne Braime's professional malpractice claim" that resulted in the prejudice that Defendant has sustained. (Id.)

## A.      Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Hersh v. Allen Prods. Co. Inc., 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor

---

[4]      Prior to obtaining coverage with Evanston, Plaintiffs' previous insurance with Garden State terminated, according to Mr. Popovitch, on June 1, 2000. (Harleysville Application, attached to Popovitch Decl.) (Docket Entry No. 14-3 at 25.)  In an effort to find insurance, Mr. Popovitch, on behalf of his law firm, completed an application that has been referred to in the record as the "Harleysville" application, dated June 1, 2000.  (Popovitch Decl. ¶10.)  However, that insurer denied coverage to Popovitch and Popovitch, ultimately leaving Plaintiffs uninsured from June 1, 2000, until December 29, 2000.  (Id,. at ¶12; Ex's. Q, R, S, T, attached to Droughton Decl.)

of either party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Pa. Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995); <u>Hancock Indus. v. Schaeffer</u>, 811 F.2d 225, 231 (3d Cir. 1987).


       **B.**     **Analysis**

    In New Jersey, "[g]enerally, when interpreting an insurance policy, courts should give the policy's words their plain, ordinary meaning." <u>Colliers Lanard & Axilbund</u>, 458 F.3d at 236 (citing <u>NAV-ITS, Inc. v. Selective Ins. Co. of Am.</u>, 183 N.J. 110 (N.J. 2005) (internal quotation marks omitted).  "If the policy language is clear, the policy should be interpreted as written, [but] [i]f the policy is ambiguous, the policy will be construed in favor of the insured." <u>Id.</u>  Further, if a policy is clear and unambiguous, the plain language of the insurance policy will control.  <u>See id.</u> at 237.  However, under New Jersey law, "insurance contracts will not be enforced if they violated public policy." <u>Sparks v. St. Paul Ins. Co.</u>, 100 N.J. 325, 334 (N.J. 1985) (citations omitted).

    Here, the parties agree that the policy at issue is a "claims-made" policy. "A 'claims made' policy provides retroactive coverage for liability arising out of acts which occurred before the policy effective date provided that the claim is brought during the policy period." <u>Colliers Lanard & Axilbund</u>, 458 F.3d at 233 n.1.  Further, "[e]xclusions in an insurance policy should be narrowly construed." <u>Id.</u> at 236 (citation omitted). "[E}xclusions are presumptively valid and will be given effect if 'specific, plain, clear, prominent, and not contrary to public policy.'" <u>Id.</u> (citation omitted).

"[A]n exclusion in a 'claims made' policy which is properly designed to prevent the 'moral hazard' of a professional 'recognizing his past error or omission' and 'rush[ing] to purchase a 'claims made' policy before the error is discovered and a claim is asserted against him' is reasonable and not a violation of public policy." Id. at 240 (discussing generally Zuckerman v. Nat'l Union Fire Ins. Co., 100 N.J. 304 (1985) and Sparks v. St. Paul Ins. Co., 100 N.J. 325 (1985)). In Sparks, the New Jersey Supreme Court invalidated a claims-made insurance policy that did not provide any retroactive coverage prior to the effective date of the policy, observing that it "combine[d] the worst features of 'occurrence' and 'claims made' policies and the best of neither," and that therefore it was against the state's public policy." Sparks v. St. Paul Ins. Co., 100 N.J. 325, 339 (N.J. 1985).  The Sparks court noted that an insured's reasonable expectation of coverage is for "reasonable retroactive coverage" under a claims made policy, but it did not define what "reasonable retroactive coverage" should include.  Id. at 340.

Here, the Court concludes that the policy at issue in this matter is different from that addressed in Sparks insofar as it is not clear whether the instant policy provides for absolutely no coverage for acts prior to the inception date pursuant to the "prior acts exclusion," which states that the "policy does not apply to any claim made against the Insured arising out of any act, error or omission in professional services . . . happening prior to" the inception date, or rather, whether the instant policy provides for no coverage for prior acts "provided that, on or prior to the effective date of this policy, no [Plaintiff] was aware of any facts or circumstances from which a reasonable person would have anticipated a claim." (Ex. Y, attached to Droughton Decl.)  This ambiguity need not be addressed.

Regardless of whether or not this Court were to conclude that the policy at issue, as has been

argued by Plaintiffs, is against public policy pursuant to <u>Sparks</u>, the parties agree that the policy was in effect from at least December 29, 2000, until December 29, 2002.  Another clear, unambiguous provision of the policy indicates that as a "condition precedent" to coverage under the policy, the insured, Plaintiff, had the duty to forward any pleadings or notices to the insurance company or to provide other sufficient written notice.  The policy at issue is very clearly a "claims made and reported" policy.  A complaint for damages that has been filed and that named Mr. Popovitch as a defendant is clearly a "claim made."[5]   It is undisputed that Ms. Braime filed what was labeled as a "Verified Petition" seeking equitable relief on November 9, 2001, (Ex. E, attached to Popovitch Decl.) (Docket Entry No. 14-3 at 40), and a "Complaint" for damages on April 30, 2004, (Ex. CC, attached to Droughton Decl.)  It is also undisputed that Plaintiff did forward the Verified Petition to Defendant and did not forward the complaint that was filed on April 30, 2004, to Defendant.  Plaintiffs argue that they relied on the letter from Defendant, dated January 22, 2002, saying that it would have been "futile" to forward any further information to Defendant regarding Ms. Braime's claim.

However, the letter addressing Ms. Braime's Verified Petition, clearly states that it was not a "claim" as it is defined within the policy because it does not demand damages.  The letter further provides that coverage under the policy for claims made during the policy period is available, provided "such Act or Personal Injury must happen during the Policy Period, or prior to the Policy Period provided that you were not aware of facts or circumstances from which a Claim should have been anticipated."  (<u>Id.</u>)  The letter further articulates that the actions did not occur during the policy

_____

[5]     The policy also defines "Claim" as "[a] demand received by The Insured for Damages."  (Ex. Y, attached to Droughton Decl.)

period, but the letter does not at all address whether Plaintiffs were "aware of facts or circumstances from which a Claim should have been anticipated." The letter also states, however, that "we caution that our comments and our understanding of the situation are based on material presently available, and may be subject to change as more information becomes available." The company also wrote:

> Please note that the statements contained herein should not be construed as a waiver of any rights, privileges and/or defenses that Evanston may have under the Policy. Our discussion of coverage and the Policy is based on information furnished to date and Evanston reserves the right to supplement this letter, as additional facts are made known or as circumstances warrant. Evanston considers all rights fully and mutually reserved.

(Ex. BB, attached to Droughton Decl.)   This letter speaks for itself, and does not in any way bar Defendant's future consideration of a "Claim," as defined by the policy, for damages filed by Ms. Braime, contrary to Plaintiffs' assertion. Rather, it clearly and unambiguously invites Plaintiffs to provide further information to the company that was either already known to Mr. Popovitch or as it became available. Because Mr. Popovitch undisputedly failed to provide further information to Defendant, Defendant was prejudiced and unable to evaluate whether the policy required it to provide coverage and whether it would defend and participate in settlement discussions. See Zuckerman v. Nat'l Union Fire Ins. Co., 100 N.J. 304, 306-07, 311, 324  (1985) (holding that when a notice provision of a claims-made policy is breached and notice is not provided to the insurance company, the Cooper appreciable prejudice rule does not apply because "it is the making of the claim which is the event and peril being insured" and to require appreciable prejudice would in effect result in "an extension of the notice period" and "an unbargained-for expansion of the coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy"). Because Mr. Popovitch did not comply with the notice requirements of the policy, this fatal omission compels the Court to conclude that Defendant's Motion for

16

Summary Judgment should be granted as a matter of law.

**III.     CONCLUSION**

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment. An appropriate form of Order accompanies this Opinion.

Dated: August17, 2009

s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.

17